# Hutchinson's Appeal.

# (Mahlon Hutchinson's Estate.)

*Construction of will.*—*Sum of money furnished as* " *capital*" *distinguished from* " *debts due*" *at death of testator.*

Where a testator, in his last will and testament, dated in 1852, forgave each and all of his children all advancements, loans of money, and debts due from any of them, " *except the capital in the hands of my son Daniel since he entered into his present business of a broker, which is to be regarded by my executors as part of my estate;*" and afterwards, in 1854, took from his son Daniel (who was named as executor and trustee in the will) a bond for $52,488, being the amount with interest of various sums of money received from his father from time to time, and used in his business ; and by a codicil, dated February 1857, republished and ratified his will as above: *Held,* That the word " capital," under the circumstances of the case, was not equivalent to " debt ;" that it was error to charge the son with the amount of the bond and interest; that his liability to the estate was to be measured by the amount lent to him by the testator as capital in his business, and that this sum should be added as part of the estate as of the time of the testator's death, without interest.

APPEAL from the Orphans' Court of *Philadelphia.*

This was an appeal by Daniel L. Hutchinson, from the decree of the Orphans' Court, confirming the report of the auditor appointed to audit, settle, and adjust the account of Bushrod W. Adams and Daniel L. Hutchinson, executors of the last will and testament of Mahlon Hutchinson. The facts of the case, so far as necessary for a proper understanding of this appeal, were these :

Mahlon Hutchinson, the testator, died in March 1862, leaving a will dated February 14th 1852, and a codicil dated February 3d 1853, which were duly proved.

He had five children living at the date of his will. After giving his household furniture to his two daughters Mrs. Sarah H. Adams and Phœbe Jane Hutchinson, who were then residing with him, with the privilege of remaining in his house for one year after his death, he added: "I forgive each and all my children all my advancements, loans of money, and debts due from any of them to me, except the capital in the hands of my

son Daniel, since he entered into his present business of a broker, which is to be regarded by my executors as part of my estate."

He then gave one-fifth of his estate, real and personal, to his eldest son Daniel L. Hutchinson absolutely, and the remaining four-fifths to Daniel L. Hutchinson and his son-in-law, Bushrod W. Adams in trust, to hold: 1. One-fifth for his son John P. Hutchinson; 2. One-fifth for his daughter Elizabeth Kintzing; 3. One-fifth for his daughter Sarah H. Adams; and 4. One-fifth for his daughter Phœbe Jane Hutchinson. In the codicil of 1857, Mrs. Adams having died, he devised her share in trust for her children, with one-third of the income thereof to their father for life, and gave the share of John P. Hutchinson to him absolutely, released from the trust, adding: "and except so far as my will is hereby altered and modified, I confirm and ratify the same in all respects."

It appeared from the evidence before the auditor, that Mr. Daniel L. Hutchinson commenced business as a broker in 1844, and that before that time he had received certain sums of money from his father. His business of broker continued till 1853, and was going on at the date of the will.

It appeared also that in and prior to the year 1844, Daniel L. Hutchinson had managed his father's whole estate; that he continued to do so until his failure in 1852; that as such general agent of his father he kept an account with him, crediting him with principal and income received, and debiting him with all outlays and expenses. The sums credited in this account to the testator are dividends, rents, and the principal of investments sold or paid off, but most of the debit entries are merely of cash, without any explanation. The testator was credited from the very first with interest. As this account went on, the balance against the son rapidly increased, until January 1st 1862, when it amounted to the sum of $48,826.52.

Soon after this date, which was about that of his failure, the agency was withdrawn from Daniel L. Hutchinson and handed over to Bushrod W. Adams. For the said sum with interest remaining unpaid, a bond with warrant of attorney was taken, dated April 17th 1854, and the amount of the debt which it mentions is $52,488, something less than the above-mentioned sum of $48,826.52, with interest from January 1st 1862.

The bond was taken from him at a period between the date of the will and the codicil. The whole amount of the testator's personal property for distribution amounted to the sum of $213,224.24. If the debt of Daniel, which was to be treated as part of the estate, was that mentioned in the bond, and interest were added to principal, it would amount to over $80,000, which would exceed his distributive share of the estate.

It was contended by the counsel of Daniel L. Hutchinson, that

[Hutchinson's Appeal.]

he was not, upon a true construction of the will, to be charged with that entire sum; that the bond included a large amount of interest; that the word "capital," used by the testator, meant "principal;" that the principal alone would amount to but little more than $30,000, which when deducted from his share would leave something to be distributed to him.

The auditor decided that the word "capital" in the will, meant the aggregate of sums retained by Daniel L. Hutchinson from the moneys of his father in his hands from time to time, and used as "capital" in his business. He therefore charged him with the whole amount of the bond and interest from the time that he ceased to act as agent for his father, which exhausted his share of the estate.

Accordingly the auditor divided the estate of the deceased into four parts, and distributed it to the other legatees. To this report exceptions were filed for the executors and accountants, as also for other persons interested in the estate, in accordance with which a supplemental corrected report was filed; but the decision relative to the indebtedness of Daniel L. Hutchinson, the propriety of adding it to the estate and dividing the assets into five parts, was adhered to. The Orphans' Court confirmed this report, whereupon Daniel L. Hutchinson entered an appeal, averring that the court below erred in deciding:—

1. That the estate must be divided into four parts, and not into five as directed by the testator.

2. That Daniel L. Hutchinson was not entitled to any part of the estate and assets.

3. That the indebtedness of Daniel L. Hutchinson to the testator bore interest.

4. That the said indebtedness bore interest before the death of the testator.

5. In not ascertaining the indebtedness of said Daniel L. Hutchinson.

6. In not ascertaining the several amounts of principal and interest due by said Daniel L. Hutchinson.

7. In not deciding that the word "capital," as used in the will, excluded interest on sums loaned.

*Henry M. Phillips*, for appellant.—I. The question is, what is the meaning of the clause of the testator's will, and especially that part which leaves out of the releasing portion, "the capital in the hands of his son Daniel." It is hard to believe that the testator intended to disinherit one of his only two sons, his eldest son too, the only one trusted in the will, to whom a share was given without the intervention of care-takers or trustees, and the one selected as executor. The spirit of his will is otherwise, and would seem to imply what the popular signification of the

words used would import, that he intended to forgive and release
all claims against his children, except the principal sum which
he had lent Daniel for a capital in his business. The bond was
not in existence when the will was made, and therefore the
meaning of the clause cannot be affected by this evidence of
debt. The codicil was made after maturity of the bond, and
operated to release it as a mere debt, so that the legal relations
of father and son must prevail as tending to manifest the inten-
tion of the testator in the language used, who may be assumed to
have known the law in this behest. At the date of the codicil,
the debt or advancement, with interest, might have absorbed
Daniel's entire share and made him a debtor to the estate, and
it is doing violence to the memory of the testator to suppose that
he intended, in leaving a large estate, to make his son a bank-
rupt or a pauper. The language of the will is explicit enough to
sustain the position, that the principal sums advanced by the
parent were all that he intended should be claimed against the
son; the claim is made as an exception in a general releasing
clause, and any existing ambiguity must, by every fair rule of con-
struction, be taken against those who seek to exclude it from
the general amnesty. But the republication of the clause by the
codicil in 1857, when interest would have so fearfully augmented
the claim, shows plainly that capital is intended to be limited to
principal and nothing else. This view will place the children
upon that footing of equality on which it is certain the will pro-
fesses to put them; it fixes the amount at the time of death, at
the principal sum, and interest accrues from that time only, on
well-known an universally recognised principles of law.

"I forgive each and all my children all my advancements,
loans of money, and debts due to me." This is a sweeping
clause, and if it ended here, every kind of imaginable claim
would be obliterated; but there is a saving clause, within which
this claim against Daniel must be confined. "Except the capital
in the hands of my son Daniel since he entered into his present
business as a broker, which is to be regarded by my executors
as part of my estate." What is the meaning of "capital?" for
that is all that is not forgiven—was it a loan, advancement, or
debt? Was it Daniel's capital in business? or was it the testa-
tor's capital which Daniel had in business? Either construction,
it is submitted, will bring about the same conclusion; a man's
capital in business is the sum upon which interest and profits are
earned. See Worcester's Dictionary, *Capital* and *Principal;*
Wharton's Law Dictionary 825, *Principal*; Bouvier's Law Dic-
tionary 233, *Capital;* Burrill's Law Dictionary 249, *Capital*.

But it is said that the bond taken by the father shows his
determination to enforce it; the authorities hereinafter given
rebut this presumption, it being expressly recognised that a debt

[Hutchinson's Appeal.]

between parent and child may be (and ought ordinarily to be) after death of the parent treated as an advancement, and not as a debt; advancements bear no interest; where there is a legacy they are technically called ademptions of legacy, but the broad word advancement is popularly used and understood as applied to cases of both testacy and intestacy. See Oyster *v.* Oyster, 1 S. & R. 424; Wagner's Appeal, 2 Wright 122; Witman's Appeal, 2 Grant 323; Thompson's Appeal, 6 Wright 345; Swope's Appeal, 3 Casey 61; Miner *v.* Atherton, 11 Id. 528; Green *v.* Howell, 6 W. & S. 203; Hall *v.* Davis, 3 Pick. 450; Osgood *v.* Breed's Heirs, 17 Mass. 358.

1. It is submitted that either

The word "capital" in the will was intended to be restricted to the "principal" and meant the same; or that the "capital" received was an advancement, and is not chargeable with interest until the death of the father; or that both the foregoing propositions may be fairly assumed, and in either event the result will be the reversal of the decree of the Orphans' Court, and a direction that the principal only shall be charged against the appellant, so that this eldest son may have some portion of his father's estate.

2. It is also submitted that there was error in not dividing the estate into five parts, as directed by the will, and in not ascertaining Daniel's indebtedness according to the auditor's view. It is to be part of the testator's estate, and each one has a right to know how much it is, and how much of it has been paid. Commissions may be charged upon it, the United States revenue tax is chargeable on it, and the proper settlement of the estate cannot be made without its liquidation.

*Pierce Archer*, Jr., for John P. Hutchinson, and *Benjamin H. Brewster* and *David Paul Brown*, for E. Kintzing, appellees.— The interpretation of the testator's will by the auditor and court below best accords with the natural desire of the parent to make his children the equal recipients of his bounty. He did not intend that any one child, especially the one grown to manhood, and therefore better able to take care of himself, should receive a large portion of his father's means, to the detriment of the other and younger children, without compensating them for the diminution of increment thereby caused. He did not disinherit him, he merely said in effect that as Daniel had already absorbed a large portion of his means which came into his hands as his agent, that he should account for those means, with interest, to the other children. This cannot be called hard; indeed it would be a real, an unjust inequality on the other children, if Daniel would be permitted to appropriate large and profitable interest-

bearing investments, mortgages, dividend-paying bank stock, &c., and account for the principal amount only.

Such was the character of the testator's property that its present value is attributable mainly to the steady growth of interest which by the testator's economy became in turn a new interest-bearing fund; the withdrawal of any considerable portion of the *corpus* by Daniel was therefore an injury, to be compensated only by interest, and so the testator and Daniel himself, until very recently, regarded it.

That the amounts of cash and investments which Daniel from time to time received, were, at the date of their receipt, considered by him and his father as advancements in anticipation of his share of his father's estate, cannot be seriously pretended.

There were other sums which his father had advanced him before the beginning of the account in question, but, as the auditor has said, they are evidently treated by the will as gifts; but how stands the account, the amount of which is now disputed? The amounts were subsequently received by Daniel while acting as the general agent of his father's business, and while he lived with him.

He charges himself every month with the interest on the balance due on the first of the preceding month, and these accounts stated are kept by Daniel himself, in his own office books, and regularly transmitted to his father for inspection. The character of the debt forbids the supposition of its being either given or received as an advancement.

Has it been converted by the testator into an advancement by his will of February 14th 1852?

The will speaks from the date of his death, but it is of great importance to view the circumstances surrounding the testator at the date of the will.

At that time the accounts showed the indebtedness of Daniel to exceed $47,000, principal and interest. Daniel was then within a few months of his failure. The testator perceived that Daniel's debt would be greater than his probable share of the estate, and in view of this fact and of his own infirm condition, he set about making his will.

He first forgives all advancements, loans of money, and debts due by any of his children, except the "capital" in Daniel's hands since he entered into the present business of a broker, and directs his executors to consider it part of his estate.

Looking at the surroundings, the plan of the testator is easy of comprehension. He forgives Daniel and the other children all advancements, &c., but specifically exacts payment of this long account to be made by Daniel, for it .s to be part of his estate. How shall he designate it? Shall he call it "advancement?" No; for it was not regarded as such by any one. Shall

he repeat "loans of money?" No; for that will not describe or include stocks and mortgages converted by Daniel, or rent due by him, nor' interest, because he finds it necessary to add "with interest" after "loaned," in the release to Adams. Shall he be tautological, and call it a "debt?" No; for that is not the term to describe this agency account. No doubt he did not regard it so much a debt as he did a portion of his estate, the mere use of which Daniel was permitted to have, charging himself with interest therefor.

He, or those who penned his thoughts, found that a larger and more descriptive word was required to describe this anomalous account, and they found it in the word "capital," with the words superadded "in the hands of my son Daniel since he entered into his present business of a broker," which included everything, stocks, funds, mortgages, rent, interest, and all.

After the testator had thus provided for this charge against Daniel, and subject thereto, he proceeded to distribute his estate among his children, and in that distribution he includes Daniel, always subject, however, to the payment of the debt in question. If he pays the debt he is a distributee; if not, and one-fifth of the estate exceeds the debt, then he is a distributee to the extent of such excess.

There is nothing in the context of the will to rebut this interpretation, but on the contrary it is in entire harmony with the testator's scheme of distribution.

The intent to release a debt by will must be explicit: Roberts v. Kaffin, 2 Atk. 112. Cases of advancement in intestates' estates, under the Acts of 1794 and 1833, are of no importance in the present case, where the true question is one not of advancement, but of construction of the testator's intention.

Oyster v. Oyster, 1 S. & R. 424. This was a case of intestacy, and the advancement was admitted. In Wagner's Appeal, 2 Wright 122, the direction in the will was to deduct the advances made to each child from his distributive share, so as to produce equality.

To the same effect is Witman's Appeal, 2 Grant 323; Thompson's Appeal, 6 Wright 345; Swope's Appeal, 3 Casey 61; 11 Id. 528, cited by the appellant.

Green v. Howell, 6 W. & S. 203, cannot be said to resemble the present case. Hall v. Davis, 3 Pick. 450, was a clear case of advancement, and is so described by the testator in his will. Osgood v. Breed's Heirs, 17 Mass. 358, simply decides that an advancement does not bear interest, a proposition which the appellees do not dispute.

When it is remembered that the debt in this case was not contracted by loan, but that it resulted from the general agency of Daniel for his father; that he charged himself with principal and

interest, gave his bond bearing interest to his father for the full amount, but gave no bond or writing for other moneys advanced him from time to time; and that his father, though appealed to by him, a year before his death, to cancel the bond, declined doing so, but retained it in his possession; the application of the following cases will be perceived: High's Appeal, 9 Harris 283, 287; Miller's Appeal, 7 Casey 339; Harris's Appeal, 2 Grant 305; Haverstack v. Sarbach, 1 W. & S. 390.

In view of the cases cited, the appellees submit that the bond given by the appellant truly represented his intention as well as that of the testator at all times, to wit: that interest should be accounted for. The design could not have been to "save something from the wreck of the child's property," for at the date of the bond he had nothing, having failed in business nearly two years before.

The opinion of the court was delivered, March 21st 1864, by

AGNEW, J.—We cannot agree with the auditor in his construction of the will of Mahlon Hutchinson, which led him to charge against Daniel L. Hutchinson interest upon the capital furnished by his father, in his business as a broker.

The will of Mahlon Hutchinson, bearing date February 14th 1852, contains this clause, viz.: "I forgive each and all my children all my advancements, loans of money, and debts due from any of them, except the capital in the hands of my son Daniel, since he entered into his present business of a broker, which is to be regarded by my executors as part of my estate."

On the 17th of April 1854, Daniel L. Hutchinson gave his father a bond in $52,488, the then amount of the principal and interest of the various sums received by him from his father, and used in his business.

In a codicil, dated February 3d 1857, Mahlon Hutchinson republished his will, by which he ratified and confirmed the clause above stated, among other unaltered parts of his will.

That between the parties in the lifetime of the testator, they treated the moneys received by Daniel as a loan of money or debt, there can be no doubt. Daniel himself so kept his accounts with his father, charging himself with interest, and finally gave his bond for the total principal and interest. Daniel also recognised his bond as a debt by including it in the inventory.

But admitting this, the question yet remains, what was the intention of the testator in his will; what did he desire should be done in Daniel's case after his death?

We can readily understand that, during his own lifetime, a father may determine to retain his control over the property he commits to the hands of his children, not only as a means of preserving filial regard and obedience toward himself, but of

preserving the estate for the benefit of his children. As remarked by Justice Rogers, in Eckert *v.* Mace, 3 Penna. 365: "Parents well know the value of subjection, and the danger there is of making children independent," and the necessity therefrom to "keep the staff in their own hands."

So far as light is thrown upon the will, there is but little value to be attached to the fact that the testator, as well as his son, treated the capital used by Daniel as a debt. Nor is the entry of the bond in the inventory, as part of the estate, of much more force. This was a duty Daniel owed to the law, which required its return for the benefit of creditors, whose rights are above and independent of the will.

But when we come to ascertain the intentions of his father, to take effect after his death, we must look at the will in a different light. It may well be supposed that, actuated by the strong feelings of a kind father, who had manifestly placed great confidence in his son, as seen not only in the advances made to set him up in business, but also in the trust confided to his care in the settlement of his estate, he intended that the principal only should be charged against him. After death had put an end to his power of control, and transferred his estate to other hands, and when a division must take place, he might very naturally wish to deal no longer with Daniel as a severe and determined creditor, and to see that no more than mere justice to his other children should be required. Looking at the relation between them as parent and child, and the confidence manifestly bestowed, we have as much reason to suppose the testator was actuated by these sentiments as to suppose he wished to retain the merciless grip of a creditor after his death. The testator made a codicil, taking no notice of his son's bond, and making no change upon the clause in question; on the contrary ratifying and confirming it.

It is in this view we think we should approach the interpretation of this clause in his will. Then what did he say?

"I forgive each and all of my children all my advancements, loans of money, and debts due from them to me." Here, then, he evinced a clear intention to extinguish all liabilities of his children. Had he stopped there, no one doubts that the entire indebtedness of Daniel, for principal and interest, would be forgiven, and the bond obliterated. But, instead of closing up at this point, he proceeds to except "the capital in the hands of my son Daniel, since he entered into his present business of a broker, which is to be regarded by my executors as part of my estate." The first thought which naturally occurs in reading this language is this: Why did the testator change his phraseology when he came to the exception? He clearly discovered his intention to release all advancements, *loans,* and *debts.* If he

intended that Daniel's whole debt as such, which of course would include interest, for cash advanced when not a gift, and money lent, always bear interest, why did he not say except the *debt* Daniel owes me, or Daniel's indebtedness for money lent to him to carry on his business as a broker? Instead of this, he takes a new word and says "except the capital in the hands of my son Daniel," &c. Certainly in the use of this new expression, he intended some change in his meaning,—he meant to convey a thought varying somewhat from the words loans of money and debts due. Did he mean capital in the ordinary sense, when we speak of the whole of the means employed by one in his business? This cannot be, for then he would have compelled Daniel to account not only for the sums advanced by himself, but for all other sums employed by him as his capital in business, proceeding from any source whatever. If not in this sense, then manifestly it must be capital in so far only as capital was advanced by himself, and it must read as if he had said, "except the sums advanced by me to Daniel in his present business as a broker." This reading would be natural, and would satisfy clearly the change of thought or intention when he varied the expression from loans or debts to capital; for we perceive readily that while he intended to forgive Daniel all these advances as loans or debts which would bear interest, he very naturally desired to charge him only with the sums he had contributed to Daniel's capital, and direct his executors to regard these only as a part of his estate.

Therefore, without refining upon the meaning of the word "capital," as found either in dictionaries or common discourse, the tenor of the will itself connected with the parental relation, the confidence exhibited on the face of the instrument, and the fact that though a codicil was made after the bond was given, no notice of the bond was taken, and no change made in this clause, manifestly requires the word capital, used in the exception, to be understood in a different sense from debt, and to mean only the sums contributed to the capital by the testator, which, thus used, excludes the intention to charge Daniel with interest.

The account must therefore go before the auditor again to ascertain and take an account of the amount thus lent to Daniel as capital in his business, which must be added to the estate as a part of it as of the time of the death of the testator without interest.

We think the auditor erred also in not first taking into account the sums thus owing by Daniel, and then making a division into five parts, and according to the terms of the will, setting apart one equal fifth of the estate to each.

It is a very easy way, it is true, of disposing of Daniel's interest under the will, to say he owes more than will come to him, and therefore let him be set aside,—but this is not a proper

mode of settling his claims.   We cannot foresee what the future of this business may require.   The auditor considered only the personal estate account; while the will blends the real and personal into an entire residue, giving an equal fifth of the whole to each one of his children.   The necessities of future settlements and distribution may require an exact statement of Daniel's liabilities, especially since we strike out the interest on his advances during his father's lifetime.

This disposes of all the errors assigned by the appellant, and it is ordered that a decree be entered reversing the decree of the Orphans' Court, and the record remitted to the said court for the purpose of being remanded to the auditor for the purpose of ascertaining the sums of money received by Daniel L. Hutchinson, of and belonging to Mahlon Hutchinson in his lifetime, and used in his business as a broker, and to charge the same in the account of the executors as a part of the estate of the testator at the time of his decease, and to restate the account and distribution according to the terms of the will of the testator ; and it is further decreed that the costs of this appeal be paid out of the estate in the hands of the executors.

STRONG, J., dissented.

WOODWARD, C. J., was absent at Nisi Prius when this case was argued.